FILED
U.S. DISTRICT COURT
EVANSVILLE DIVISION

2014 JUL 30  PM 12: 42

SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

UNITED STATES OF AMERICA,       )
                                )
            Plaintiff,          )
                                )
      v.                        )     Cause No.  3:14-cr- 38 RLY-WGH
                                )
                                )
MICHAEL J. RUPERT,              )            -01
                                )
and                             )
                                )
KYLE N. HUDSON,                 )            -02
                                )
            Defendants.         )

# INDICTMENT

The Grand Jury Charges that:

## GENERAL ALLEGATIONS

At all times relevant to, and referenced in, this Indictment:

### Business Entities Used to Facilitate the Offenses

#### Deal Makers

1.      Deal Makers is a buy sell and trade business based in Newburgh, Indiana.  Deal Makers maintains a second location in Henderson, Kentucky.  Deal Makers is managed and operated by MICHAEL J. RUPERT (hereafter RUPERT).  Deal Makers buys and resells valuable goods.  Deal Makers is a Limited Liability Company organized in Indiana.

#### Kyle's Cell Phone Accessories and iPhone Repair

2.      Kyle's Cell Phone Accessories and i-Phone Repair is a business operated by

[1]

KYLE N. HUDSON (hereafter HUDSON) that offers repair services for cellular telephones.

Until on or about May 22, 2014, the business was operated from 2604 South Kentucky Avenue

in Evansville, Indiana. Beginning on or about June 9, 2014, the business started operating from

2008 Washington Avenue, Evansville, Indiana.

## eBay

3.     eBay, Incorporated is an electronic commerce business based in San Jose,

California that allows users to buy and sell items through internet based auctions. In order to buy

and sell using eBay, persons must create an eBay account. Sellers may sell items using a classic

auction format to the highest bidder or using a "buy now" option offering an immediate sale to

the first buyer willing to pay a set price. eBay maintains detailed records related to the sales

activity of eBay users including item descriptions, sales prices, buyer locations, and locations

where items are shipped after sale. Sellers on eBay are responsible for shipping the items they

sell using the United States mail and interstate commercial carriers. Buyers on eBay are located

throughout the United States and in foreign countries. Items sold on eBay are routinely

transferred in interstate and foreign commerce.

## PayPal

4.     PayPal Incorporated is an electronic commerce business based in San Jose,

California. Though they are separate entities, eBay and PayPal operate in conjunction for the

benefit of their customers. PayPal provides buyers and sellers using eBay with a means to

complete sales through electronic funds transfers. In order to use PayPal, a person must create a

PayPal account. PayPal maintains detailed records related to the exchange of funds using Paypal

accounts. PayPal allows its users to transfer funds to individual bank accounts and offers its

[2]

users debit cards to access their PayPal account balances. These debit cards can be used to make cash withdrawals from automatic teller machines and can be used to make retail purchases like a standard credit card or bank debit card.

### Accounts Used to Facilitate the Offenses

### Rupert eBay and PayPal Accounts

5.   RUPERT used the following eBay account that he controlled in the furtherance of the offenses set forth in the Indictment:

A.   User ID – mrupert06gt;

B.   Full Name – Michael Rupert;

C.   Company Name – Dealmakers;

D.   Shipping Address – 7600 Apple Way, Newburgh, IN 47630;

E.   Daytime Phone Number – (XXX) XXX-1958; and

F.   Evening Phone Number – (XXX) XXX-8117

(hereafter Rupert eBay account). The Rupert eBay account is linked to a corresponding PayPal account with an account number ending in the digits 20678 (hereafter Rupert PayPal account). RUPERT received payment for items sold using the Rupert eBay account through the Rupert PayPal account. Funds received as payment for items sold were credited to the Rupert PayPal account. RUPERT gained access to the funds held in the Rupert PayPal account through the use of PayPal debit cards and by causing funds held in the Rupert PayPal account to be transferred to a Deal Makers account he controlled with the Heritage Federal Credit Union.

### Deal Makers Heritage Federal Credit Union Account

6.   Between August 22, 2012, and April 8, 2014, funds flowed from Rupert's PayPal

[3]

account, by wire transfer, to a bank account number ending in the digits 6419 held with Heritage Federal Credit Union under the business name Deal Makers.

### Spain/Hudson eBay and PayPal Accounts

7.    HUDSON and S.S. used the following eBay account that they controlled in furtherance of the offenses set forth in this Indictment:

      A.  User ID – spainhudson12;

      B.  Full Name – Stephani Hudson;

      C.  Shipping Address – XXXX S. Parker Drive, Evansville, IN 47714;

      D.  Daytime Phone Number – (XXX) XXX-2588; and

      E.  Evening Phone Number – (XXX) XXX-1189

(hereafter Spain/Hudson eBay account). The Spain/Hudson eBay account is linked to a corresponding PayPal account with an account number ending in the digits 90520 (hereafter Spain/Hudson PayPal account). S.S. and HUDSON received payments for items sold using the Spain/Hudson eBay account through the Spain/Hudson PayPal account. Funds received as payment for items sold were credited to the Spain/Hudson PayPal account. S.S. and HUDSON gained access to the funds held in the Spain/Hudson PayPal account through use of PayPal debit cards and by causing funds held in the Spain/Hudson PayPal account to be transferred to a bank account they controlled held with Old National Bank.

### Hudson Old National Bank Account

8.    Between January 1, 2013, and April 8, 2014, funds flowed from the Spain/Hudson PayPal account, by wire transfer, to a bank account number ending in the digits 9606 held with Old National Bank under the names Kyle Hudson or R.S., a family member of HUDSON's

[4]

known to the Grand Jury.

### Defendants and Other Persons Known to the Grand Jury

9.     MICHAEL J. RUPERT – RUPERT, the manager and primary operator of Deal Makers, participated in the purchase and sale of stolen property as a part of the organized criminal activity described in this indictment.

10.     KYLE HUDSON – HUDSON, the operator of Kyle's Cell Phone Accessories and iPhone repair, participated in the purchase and sale of stolen property as a part of the organized criminal activity described in this indictment.

11.     S.S. – S.S. had a close personal relationship with HUDSON. At times during the alleged conspiracy, S.S lived with HUDSON. S.S. controlled and operated the Spain/Hudson eBay account used for the sale of stolen property.

12.     A.B. – A.B. had a close personal relationship with and lived with RUPERT. A.B. worked for Deal Makers and prepared listings for the Rupert eBay account as a part of her work for Deal Makers.

13.     K.P. – K.P. was a participant in the organized criminal activity described in this indictment and is known to the Grand Jury. K.P. has participated in the theft and fraudulent acquisition of property sold by RUPERT and HUDSON.

14.     P.W. – P.W. was a participant in the organized criminal activity described in this indictment and is known to the Grand Jury. P.W. has participated in the theft and fraudulent acquisition of property sold by RUPERT and HUDSON.

15.     L.A. – L.A. was a participant in the organized criminal activity described in this indictment and is known to the Grand Jury. L.A. has participated in the theft of property sold by

[5]

RUPERT and HUDSON.

16.     E.S. – E.S. was a participant in the organized criminal activity described in this indictment and is known to the Grand Jury. E.S. has participated in the theft of property sold by RUPERT and HUDSON.

17.     K.J. – K.J. was a participant in the organized criminal activity described in this indictment and is known to the Grand Jury. K.J. has participated in the theft of property sold by RUPERT and HUDSON.

18.     Z.W. – Z.W. was a participant in the organized criminal activity described in this indictment and is known to the Grand Jury. Z.W. has participated in the theft of property sold by RUPERT and HUDSON.

19.     R.S. – R.S. had a close family relationship with HUDSON.

20.     Individual #2 - Individual #2 is a person known to the Grand Jury who cooperated in the investigation of RUPERT and HUDSON. Prior to his cooperation Individual #2 had an established relationship with RUPERT and HUDSON that involved Individual #2 selling stolen property to RUPERT and HUDSON.

## SPECIFIC OFFENSES

21.     The general allegations are re-alleged and incorporated by reference in each count as if set forth in full.

## Count 1

[18 U.S.C. §§ 371 and 2314 – Conspiracy to Commit Interstate Transportation of Stolen Property]

22.     Beginning on or about March 19, 2012, the exact date being unknown to the Grand Jury, and continuing to on or about July 30, 2014, in the Southern District of Indiana, and

[6]

elsewhere, RUPERT and HUDSON, the defendants herein, and others known and unknown to the Grand Jury, did conspire with each other to commit the offense of Interstate Transportation of Stolen Property defined by Title 18, United States Code, Section 2314, as transporting, transmitting, or transferring, in interstate or foreign commerce, any goods, wares, merchandise, securities or money, of an aggregate value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud, in violation of Title 18, United States Code, Sections 2314 and 2311, and RUPERT, HUDSON, and their co-conspirators did engage in conduct in furtherance of such offense by performing certain overt acts to effect the object of the conspiracy.

## Objective of the Conspiracy

23.     The participants in the conspiracy sought to enrich themselves through the sale and interstate shipment of valuable goods that had been stolen and taken by fraud using eBay, PayPal, the United States mail and interstate commercial carriers.

## Manner and Means of the Conspiracy

24.     Certain participants in the conspiracy acquired valuable goods from retail merchants in the Evansville area, and elsewhere, by means of fraud, forceful walk out thefts, and organized shop lifting based on their immediate need for cash. The participants in the conspiracy who committed such acts of fraud and theft sold the valuable goods so acquired (hereafter stolen goods) to RUPERT and HUDSON who paid these participants in the conspiracy cash constituting a percentage of the retail value of the stolen goods. RUPERT, HUDSON, S.S., and A.B. then listed the stolen goods for sale on the Rupert and the Spain/Hudson eBay accounts.

[7]

After the goods were sold, RUPERT, HUDSON, S.S., and A.B. caused the stolen goods to be shipped to the successful eBay buyers who were located outside of Indiana using the United States mail and other interstate commercial carriers. RUPERT, HUDSON, S.S., and A.B. received payment for the stolen goods so sold and shipped by electronic funds transfers through the Rupert and Spain/Hudson PayPal accounts. RUPERT, HUDSON, S.S., and A.B. used the PayPal proceeds to fund personal expenditures and converted some of the proceeds to cash to facilitate the continuing operation of the conspiracy.

## Overt Acts of the Conspiracy

25.    In the furtherance of the conspiracy and in order to achieve the objective of the conspiracy RUPERT, HUDSON, S.S., A.B., and others known and unknown to the Grand Jury committed at least one of the overt acts described below in the Southern District of Indiana.

### HUDSON Macy's Property

26.    Between on or about December 29, 2013, and January 14, 2014, K.P., P.W., K.J., Z.W., and others known and unknown to the Grand Jury, entered Macy's retail sales locations in the Evansville, Indiana, and Louisville, Kentucky, area for the purpose of committing thefts, successfully committed thefts of valuable merchandise, including Coach purses and wallets, aided each other in committing the thefts, and aided each other in getting away from the Macy's locations after the thefts.

27.    Between on or about December 29, 2013, and January 14, 2014, K.P., P.W., K.J., Z.W., and others known and unknown to the Grand Jury, delivered the stolen Coach purses and wallets to HUDSON and S.S. in exchange for cash.

28.    Between on or about December 29, 2013, and January 14, 2014, HUDSON and

[8]

S.S. listed the stolen Coach purses and wallets for sale on the Spain/Hudson eBay account.

29.     Between on or about December 29, 2013, and January 15, 2014, HUDSON and S.S. sold the stolen Coach purses and wallets using the Spain/Hudson eBay account.

30.     Between on or about December 29, 2013, and January 15, 2014, HUDSON and S.S. caused the stolen Coach purses and wallets to be shipped to eBay buyers outside of Indiana.

### HUDSON Dillard's Property

31.     Between on or about January 1, 2014, and June 25, 2014, K.P., P.W., K.J., Z.W., and others known and unknown to the Grand Jury, entered a Dillard's retail sales location in Evansville, Indiana, for the purpose of committing thefts, successfully committed thefts of valuable merchandise, including Michael Kors and Coach purses and wallets, aided each other in committing the thefts, and aided each other in getting away from the Dillard's location after the thefts.

32.     Between on or about January 1, 2014, and June 25, 2014, K.P., P.W., K.J., Z.W., and others known and unknown to the Grand Jury, delivered the stolen Michael Kors and Coach purses and wallets to HUDSON and S.S. in exchange for cash.

33.     Between on or about January 1, 2014, and June 25, 2014, HUDSON and S.S. listed the stolen Michael Kors and Coach purses and wallets for sale on the Spain/Hudson eBay account.

34.     Between on or about January 1, 2014, and June 25, 2014, HUDSON and S.S. sold the stolen Michael Kors and Coach purses and wallets using the Spain/Hudson eBay account.

35.     Between on or about January 1, 2014, and June 25, 2014, HUDSON and S.S.

caused the stolen Michael Kors and Coach purses and wallets to be shipped to eBay buyers outside of Indiana.

### HUDSON Home Depot Property

36.     Between on or about January 21, 2014, and January 29, 2014, K.P., P.W., K.J., E.S, and others known and unknown to the Grand Jury, entered Home Depot retail sales locations in the Evansville, Indiana, area for the purpose of committing thefts, successfully committed thefts of valuable merchandise including power tools, aided each other in committing the thefts, and aided each other in getting away from the Home Depot locations after the thefts.

37.     Between on or about January 21, 2014, and January 29, 2014, K.P., P.W., K.J., E.S, and others known and unknown to the Grand Jury, delivered the stolen power tools to HUDSON and S.S. in exchange for cash.

38.     Between on or about January 21, 2014, and January 29, 2014, HUDSON and S.S. listed the stolen power tools for sale on the Spain/Hudson eBay account.

39.     Between on or about January 21, 2014, and January 29, 2014, HUDSON and S.S. sold the stolen power tools using the Spain/Hudson eBay account.

40.     Between on or about January 21, 2014, and January 29, 2014, HUDSON and S.S. caused the stolen power tools to be shipped to eBay buyers outside of Indiana.

### HUDSON Use of Proceeds

41.     After the sales of the stolen property were completed using the Spain/Hudson eBay and PayPal accounts, HUDSON and S.S. used the proceeds from the sales for their personal benefit.

### RUPERT Macy's Property

[10]

42.     Between on or about July 1, 2013, and February 10, 2014, K.P., P.W., K.J., Z.W., and others known and unknown to the Grand Jury, entered Macy's retail sales locations in the Evansville, Indiana, and Louisville, Kentucky, area for the purpose of committing thefts, successfully committed thefts of valuable merchandise, including Coach, Dooney & Bourke, and Michael Kors purses and wallets, aided each other in committing the thefts, and aided each other in getting away from the Macy's locations after the thefts.

43.     Between on or about July 1, 2013, and February 10, 2014, K.P., P.W., K.J., Z.W., HUDSON, S.S., and others known and unknown to the Grand Jury, delivered the stolen Coach, Dooney & Bourke, and Michael Kors purses and wallets to RUPERT in exchange for cash.

44.     Between on or about July 1, 2013, and February 10, 2014, RUPERT, A.B., and others working for Deal Makers listed the stolen Coach, Dooney & Bourke, and Michael Kors purses and wallets for sale on the Rupert eBay account.

45.     Between on or about July 1, 2013, and February 10, 2014, RUPERT sold the stolen Coach, Dooney & Bourke, and Michael Kors purses and wallets using the Rupert eBay account.

46.     Between on or about July 1, 2013, and February 10, 2014, RUPERT caused the stolen Coach, Dooney & Bourke, and Michael Kors purses and wallets to be shipped to eBay buyers outside of Indiana.

**RUPERT Dillard's Property**

47.     Between on or about January 1, 2014, and June 25, 2014, K.P., P.W., K.J., Z.W., E.S, and others known and unknown to the Grand Jury, entered a Dillard's retail sales location in Evansville, Indiana, for the purpose of committing thefts, successfully committed thefts of

[11]

valuable merchandise, including Michael Kors and Coach purses and wallets, aided each other in committing the thefts, and aided each other in getting away from the Dillard's location after the thefts.

48.     Between on or about January 1, 2014, and June 25, 2014, K.P., P.W., K.J., Z.W., E.S, and others known and unknown to the Grand Jury, delivered the stolen Michael Kors and Coach purses and wallets to RUPERT in exchange for cash.

49.     Between on or about January 1, 2014, and June 25, 2014, RUPERT, A.B., and others working for Deal Makers listed the stolen Michael Kors and Coach purses and wallets for sale on the Rupert eBay account.

50.     Between on or about January 1, 2014, and June 25, 2014, RUPERT sold the stolen Michael Kors and Coach purses and wallets using the Rupert eBay account.

51.     Between on or about January 1, 2014, and June 25, 2014, RUPERT caused the stolen Michael Kors and Coach purses and wallets to be shipped to eBay buyers outside of Indiana.

### RUPERT Home Depot Property

52.     Between on or about May 29, 2012, and May 21, 2014, K.P., P.W., K.J., E.S., and others known and unknown to the Grand Jury, entered Home Depot retail sales locations in the Evansville, Indiana, area for the purpose of committing thefts, successfully committed thefts of valuable merchandise, including power tools, hand tools, and battery chargers, aided each other in committing the thefts, and aided each other in getting away from the Home Depot locations after the thefts.

53.     Between on or about May 29, 2012, and May 21, 2014, K.P., P.W., K.J., E.S.,

HUDSON, S.S., and others known and unknown to the Grand Jury, delivered the power tools, hand tools, and battery chargers stolen from Home Depot retail sales locations in the Evansville, Indiana, area to RUPERT in exchange for cash.

54.     Between on or about May 29, 2012, and May 21, 2014, RUPERT, A.B., and others working for Deal Makers listed the stolen power tools, hand tools, and battery chargers for sale on the Rupert eBay account.

55.     Between on or about May 29, 2012, and May 21, 2014, RUPERT sold the stolen power tools, hand tools, and battery chargers using the Rupert eBay account.

56.     Between on or about May 29, 2012, and May 21, 2014, RUPERT caused the stolen power tools, hand tools, and battery chargers to be shipped to eBay buyers outside of Indiana.

### RUPERT Use of Proceeds

57.     After the sales of the stolen property were completed using the Rupert eBay and PayPal accounts, RUPERT used the proceeds from the sales to fund personal expenditures for himself and A.B., and RUPERT converted a portion of the proceeds to cash to facilitate the continuing operation of the conspiracy.

### Specific Transactions

58.     On or about February 24, 2014, HUDSON purchased a new DeWalt 20-Volt Impact Driver drill, purportedly stolen from the retail merchant Lowe's, from Individual #2 for $80.00. Thereafter HUDSON caused the DeWalt Impact Driver to be transferred to RUPERT. On or about March 4, 2014, the DeWalt Impact Driver was sold on the Rupert eBay account and shipped to a buyer in the country of Lithuania.  During a conversation that took place where

[13]

Individual #2 delivered the DeWalt Impact Driver to HUDSON, Individual #2 told HUDSON he had someone who could get more items and wanted to know what brands HUDSON wanted. HUDSON said, "DeWalt, Makita, Milwaukee and Craftsman stuff too, of course." HUDSON said that those items are "quick moves and eBay moves, a quick move."

59.     On February 28, 2014, HUDSON purchased a new DeWalt twelve volt lithium-ion drill kit, purportedly stolen from the retail merchant Lowe's, from Individual #2 for $80.00. Thereafter HUDSON caused the DeWalt drill kit to be transferred to RUPERT. The DeWalt drill kit was sold on the Rupert eBay account on April 5, 2014, and was shipped to a buyer in Golden Valley, Minnesota.

60.     On March 18, 2014, HUDSON purchased four items purportedly stolen from the retail merchant Wal-Mart, including two fifty-five inch LG televisions, one Acer desktop computer, and one Hewlett Packard desktop computer, from Individual #2 for $800. During negotiations related to the purchase, Individual #2 told HUDSON, "They got them right in the aisle" and "I was just happy we got out of there with the shit." Individual #2 delivered the items to a flea market owned at the time by HUDSON's family located at 2600 South Kentucky Avenue, Evansville, Indiana. HUDSON paid Individual #2 $800 for the merchandise. Thereafter, HUDSON caused the Hewlett Packard desktop computer and the Acer desktop computer to be transferred to RUPERT. On March 19, 2014, the Hewlett Packard desktop computer was listed for sale on the Rupert eBay account. Persons known to the Grand Jury assisting in the investigation purchased the Hewlett Packard computer using an eBay account, and RUPERT caused the Hewlett Packard computer to be shipped from Deal Makers in Newburgh, Indiana, to Atlanta, Georgia. The computer was then turned over to law enforcement

investigators. On or about March 20, 2014, the Acer desktop computer was sold using the Rupert eBay account for approximately $415. The Acer computer was shipped by RUPERT to an eBay buyer located in Fort Worth, Texas.

61.     On March 19, 2014, RUPERT purchased two new Milwaukee eighteen volt drill kits that were purportedly stolen from the retail merchant Home Depot from Individual #2 for $200. The transaction occurred inside the Deal Makers business located in Newburgh, Indiana. During the meeting, RUPERT looked up the price of the drills on a computer inside Deal Makers and agreed to give Individual #2 approximately half of the amount RUPERT believed he could get when he sold the drills. On March 27, 2014, one of the Milwaukee drill kits was listed for sale on the Rupert eBay account. Persons known to the Grand Jury assisting in the investigation purchased the Milwaukee drill kit using an eBay account and RUPERT caused the Milwaukee drill kit to be shipped from Deal Makers in Newburgh, Indiana, to Michigan. The drill was then turned over to law enforcement investigators.

62.     On March 20, 2014, and March 26, 2014, Individual #2 and RUPERT engaged in conversations about RUPERT's willingness to purchase purportedly stolen or fraudulently obtained gift cards from Individual #2. RUPERT agreed to purchase gift cards from Individual #2 for approximately half of the value loaded on the cards.

63.     On April 2, 2014, RUPERT purchased a Home Depot gift card with a value of $294 purportedly stolen or obtained by fraud from the retail merchant Home Depot from Individual #2 for $147. The transaction occurred inside the Deal Makers business located in Newburgh, Indiana. Individual #2 was paid in cash taken from the cash register by a female working inside Deal Makers with RUPERT. On April 3, 2014, the Home Depot gift card was

[15]

listed for sale on the Rupert eBay account. The card sold for $275 and was shipped by RUPERT to an eBay buyer located in Tucson, Arizona.

64.     On April 8, 2014, HUDSON purchased a Home Depot gift card with a value of $320.32 purportedly stolen or obtained by fraud from the retail merchant Home Depot from Individual #2 for $160. At the time of the transaction HUDSON told S.S. to check the balance on the gift card that Individual #2 was offering to sell. Thereafter HUDSON caused the gift card to be transferred to RUPERT. The gift card was sold on the Rupert eBay account on April 9, 2014, and was shipped to a buyer in Shorewood, Wisconsin.

65.     On April 9, 2014, HUDSON purchased a Home Depot gift card with a value of $322.59 purportedly stolen or obtained by fraud from the retail merchant Home Depot from Individual #2 for $165. Thereafter HUDSON caused the gift card to be transferred to RUPERT. The gift card was sold on the Rupert eBay account on April 10, 2014, and was shipped to a buyer in Hockley, Texas.

66.     On April 23, 2014, HUDSON purchased a Home Depot gift card with a value of $251.01 purportedly stolen or obtained by fraud from the retail merchant Home Depot from Individual #2. Thereafter HUDSON caused the gift card to be transferred to RUPERT. The gift card was sold on the Rupert eBay account on April 24, 2014, and was shipped to a buyer in Salem, Oregon.

67.     On April 23, 2014, HUDSON purchased a Wal Mart gift card with a value of $220 purportedly stolen or obtained by fraud from the retail merchant Wal Mart from Individual #2. Thereafter HUDSON caused the gift card to be transferred to RUPERT. The gift card was sold on the Rupert eBay account on April 24, 2014, and was shipped to a buyer in Gaithersburg,

Maryland.

68.     On April 26, 2014, K.P., and other persons known to the Grand Jury entered a
Stein Mart retail sales location in Evansville, Indiana, for the purpose of committing thefts,
successfully committed thefts of valuable merchandise, including Michael Kors purses, aided
each other in committing the thefts, and aided each other in getting away from the Stein Mart
location after the thefts.  Thereafter the stolen Michael Kors purses were delivered to RUPERT.
RUPERT listed the stolen Michael Kors purses for sale on his eBay account.  RUPERT sold the
stolen Michael Kors purses and wallets using his eBay account.  After the sales, RUPERT
caused the stolen Michael Kors purses to be shipped to eBay buyers outside of Indiana.

69.     On May 2, 2014, HUDSON purchased a Wal Mart gift card with a value of $200
purportedly stolen or obtained by fraud from the retail merchant Wal Mart from Individual #2.
Thereafter HUDSON caused the gift card to be transferred to RUPERT.  The gift card was sold
on the Rupert eBay account on May 3, 2014, and was shipped to a buyer in Jersey City, New
Jersey.

70.     On May 2, 2014, HUDSON purchased a Home Depot gift card with a value of
$279.17 purportedly stolen or obtained by fraud from the retail merchant Home Depot from
Individual #2.  Thereafter HUDSON caused the gift card to be transferred to RUPERT.  The gift
card was sold on RUPERT's eBay account on May 3, 2014, and was shipped to a buyer in
Cranford, New Jersey.

71.     On May 7, 2014, E.S. and others known to the Grand Jury entered a Stein Mart
retail sales location in Evansville, Indiana, for the purpose of committing thefts, successfully
committed thefts of valuable merchandise, including Michael Kors purses, aided each other in

[17]

committing the thefts, and aided each other in getting away from the Stein Mart location after the thefts. Thereafter the stolen Michael Kors purses were delivered to RUPERT. RUPERT listed the stolen Michael Kors purses for sale on his eBay account. RUPERT sold the stolen Michael Kors purses using his eBay account. After the sales RUPERT caused the stolen Michael Kors purses to be shipped to eBay buyers outside of Indiana.

72.     On May 7, 2014, HUDSON purchased a Wal Mart gift card with a value of $200 purportedly stolen or obtained by fraud from the retail merchant Wal Mart from Individual #2. Thereafter HUDSON caused the gift card to be transferred to RUPERT. The gift card was sold on the Rupert eBay account on May 10, 2014, and was shipped to a buyer in Colts Neck, New Jersey.

73.     On May 7, 2014, HUDSON purchased a Home Depot card with a value of $278.02 purportedly stolen or obtained by fraud from the retail merchant Home Depot from Individual #2. Thereafter HUDSON caused the gift card to be transferred to RUPERT. The gift card was sold on the Rupert eBay account on May 9, 2014, and was shipped to a buyer in Salem, Oregon.

74.     On or about May 24, 2014, K.P. and P.W. purchased a pair of Beats studio headphones from an Evansville, Indiana, Best Buy retail merchant using a stolen credit card. Thereafter, K.P. and P.W. caused the headphones to be transferred to RUPERT. The headphones were sold on the Rupert eBay account on May 27, 2014, and were shipped to a buyer located outside of Indiana.

75.     On or about May 24, 2014, K.P. and P.W. purchased one Pill Portable Stereo Speaker from an Evansville, Indiana, Best Buy retail merchant using a stolen credit card.

[18]

Thereafter K.P. and P.W. caused the stereo speaker to be transferred to RUPERT. The stereo speaker was sold on the Rupert eBay account on May 31, 2014, and was shipped to a buyer located outside of Indiana.

76.     On or about May 27, 2014, K.P. and P.W. purchased a 40 inch television from a Wal Mart retail sales location in Evansville, Indiana, using a stolen credit card. HUDSON paid K.P. and P.W. cash for the television. On May 28, 2014, HUDSON returned the television to a Wal Mart location in Newburgh, Indiana, in exchange for a Wal Mart gift card with a value of $479.36. HUDSON then made a telephone call to RUPERT in which he described the transaction saying, "It took me uh maybe a minute if that long total, they did not ask for no ID no name nothing they just … took it took the receipt scanned it and they said do you want a gift card or do you want us to credit this account and I said well really I need just wanted to get a gift card cause there is things in here … things I need more than I do a TV." Rupert replied, "Cool." Thereafter HUDSON caused the gift card to be transferred of RUPERT. The gift card was sold on the Rupert eBay account on May 28, 2014, and was shipped to a buyer in Stockton, California.

77.     On June 5, 2013, RUPERT purchased a Dooney and Bourke purse, two Milwaukee power drills, and a Home Depot gift card with a value $303.60 purportedly stolen or obtained by fraud from Individual #2. The transaction occurred inside the Deal Makers business located in Newburgh, Indiana. Individual #2 was paid $500 in cash taken from the cash register. The Dooney and Bourke purse had a security tag attached to it when Individual #2 brought it into Deal Makers. When Individual #2 cut the tag off the purse at Rupert's direction, the tag emitted a loud alarm sound. The stolen Dooney and Bourke purse was sold on the Rupert eBay account

[19]

on June 8, 2014, and was shipped to a buyer outside of Indiana.

78.     On June 7, 2014, P.W. and L.A. stole two Roomba robot vacuum cleaners from a Bed Bath and Beyond retail sales location in Evansville, Indiana.  The vacuums were thereafter delivered to RUPERT.  RUPERT listed the vacuums for sale on the Rupert eBay account.  One of the vacuums sold on June 9, 2014, for approximately $455 and one sold on June 13, 2014, for approximately $651.  Both of the vacuums were shipped to buyers outside of Indiana.

79.     On June 8, 2014, at approximately 3:43 p.m., P.W. participated in the telephone conversation with HUDSON in which he told HUDSON "I'm about to uh... go make a run here in just one second."  HUDSON replied "alright."  HUDSON then asked, "What are you getting, you said that Dyson vacuum?"  P.W. replied "yeah" and informed HUDSON he was going to get some tools.  HUDSON asked P.W., "How much is the Dyson?"  P.W. told HUDSON that they are $500 each in the store but he will sell him two of them for "cheap, cheap."  At approximately 5:00 p.m., P.W. and L.A. stole two Dyson vacuum cleaners from a J.C. Penny retail sales location in Evansville, Indiana.  At approximately 5:20 p.m. K.P, P.W., and L.A. transferred the stolen vacuums to HUDSON in exchange for cash.  At approximately 6:03 p.m., HUDSON had a telephone conversation with RUPERT in which he asked RUPERT, "Do you ever buy Dyson vacuums?"  RUPERT replied, "sometimes."  HUDSON responded by saying, "I've got two brand new ones ... look them up ... I want to make sure we both make some good money."  RUPERT told HUDSON to text him the model numbers.  At approximately 6:05 p.m., HUDSON sent a text message to RUPERT's cellular telephone informing RUPERT that he had "DC65 Animal DC59 Animal" Dyson vacuums.  RUPERT responded with a text message stating "350 to 400."  HUDSON replied "If you give me $400 can you come out good?"

RUPERT responded "I think so."  HUDSON replied to RUPERT "I can make $100 if you give me $400."  RUPERT replied "Ok."  HUDSON and RUPERT then made arrangements to meet so that HUDSON could deliver the vacuums to RUPERT.

80.     On June 9, 2014, P.W. and L.A. stole two Dyson vacuum cleaners from the North Burkhardt Road Kohl's retail sales location in Evansville, Indiana.

81.     On June 10, 2014, at approximately 11:39 a.m., P.W. placed a telephone call to HUDSON in which he said, "Ok, I am on my way to get these this ah, you still want that big vacuum cleaner right?"  HUDSON replied, "Yea, how much is it going to be?"  P.W. replied, "I don't know I figured I grab two of em and just do a package deal, I don't need much today, right now, I will sell you both of them pretty cheap."  At approximately 2:40 p.m., HUDSON placed a call to R.S. in which he discussed the vacuum cleaners and stated, "It's a Dyson DC 65 animal and I also got a Dyson DC59 which is the slim one that's just like a pole ... I paid $200 for both of them brand new in the box."  R.S. replied, "before you sell them I want to see them."  HUDSON then said, "well you better say something now cause I can go get $500 for both of them right now from Mike."

82.     On June 10, 2014, at approximately 1:51 p.m. P.W. and L.A. stole two Dyson vacuum cleaners from the North Burkhardt Road Kohls retail sales location in Evansville, Indiana.

83.     On June 10, 2014, P.W., L.A. and K.P. drove to the South Parker Drive, Evansville, Indiana, residence of HUDSON, where HUDSON purchased two stolen vacuums for cash.  At approximately 5:20 p.m., HUDSON delivered the stolen vacuums to RUPERT at Deal Makers.

84.     On June 10, 2014, at approximately 6:00 p.m., P.W. and L.A. stole two Dyson vacuum cleaners from the Hogue Road Kohls retail sales location in Evansville, Indiana. At approximately 5:34 p.m., before committing the thefts, P.W. had a telephone conversation with HUDSON in which he said to HUDSON, "Do you want to buy two more of them?" HUDSON replied, "the big ones or the small ones?" P.W. answered, "I won't be able to get two big ones, but I can probably get a big one and a small one." HUDSON ultimately agreed to buy the vacuums, and P.W. concluded the call saying, "I'm going to do this now." After stealing the two vacuums, P.W., L.A., and K.P., delivered them to HUDSON in exchange for cash. HUDSON then transferred one or more of the stolen vacuums to RUPERT.

85.     Between June 7, 2014, and June 11, 2014, RUPERT listed seven new Dyson vacuum cleaners, in the original retail sales boxes, for sale on the Rupert eBay account. Six of the vacuums were sold and shipped by RUPERT to eBay buyers outside of Indiana.

All of which is in violation of Title 18, United States Code, Section 371.

## Count 2

[18 U.S.C. § 2314 – Interstate Transportation of Stolen Property]

86.     The Grand Jury re-alleges and incorporates by reference the allegations contained in the general allegations section and Count 1 of this Indictment as if set forth in full here.

87.     The Grand Jury further charges that between July 1, 2013, and February 10, 2014, in the Southern District of Indiana, and elsewhere, MICHAEL J. RUPERT, the defendant herein, did transport, transmit, and transfer, in interstate or foreign commerce, any goods, wares, merchandise, securities or money, of an aggregate value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud, to wit: RUPERT caused purses and wallets with a

[22]

retail value of greater than $5,000 stolen from Macy's retail sales locations in the Sothern

District of Indiana, and elsewhere, to be shipped to buyers outside of Indiana after completing

sales of the stolen items using the Rupert eBay account, in violation of Title 18, United States

Code, Section 2314.

## Count 3

[18 U.S.C. § 2314 – Interstate Transportation of Stolen Property]

88.      The Grand Jury re-alleges and incorporates by reference the allegations contained

in the general allegations section and Count 1 of this Indictment as if set forth in full here.

89.      The Grand Jury further charges that between March 19, 2012, and May 22, 2014,

in the Southern District of Indiana, and elsewhere, MICHAEL J. RUPERT, the defendant herein,

did transport, transmit, and transfer, in interstate or foreign commerce, any goods, wares,

merchandise, securities or money, of an aggregate value of $5,000 or more, knowing the same to

have been stolen, converted or taken by fraud, to wit:  RUPERT caused power tools, chargers,

and other valuable merchandise with a retail value of greater than $5,000 stolen from Home

Depot retail sales locations in the Southern District of Indiana to be shipped to buyers outside of

Indiana after completing sales of the stolen items using the Rupert eBay account, in violation of

Title 18, United States Code, Section 2314.

## **FORFEITURE**

90.      Pursuant to Federal Rule of Criminal Procedure 32.2, the United States hereby

notifies the Defendants named in this Indictment that it will seek forfeiture of property if the

Defendants are convicted of any offense in violation of Title 18, United States Code, Sections

371 and 2314 (Conspiracy to Commit Interstate Transportation of Stolen Property), as set forth

in Count One, or any offense in violation of Title 18, United States Code, Section 2314 (Interstate Transportation of Stolen Property), as set forth in Counts Two and Three.

91.     Pursuant to Title 18, United States Code, Section 981(a)(1)(C), incorporating "specified unlawful activity" as described in Title 18, United States Code, Section 1956(c)(7)(A), incorporating Title 18, United States Code, Section 1961(1), which defines Interstate Transportation of Stolen Property as a specified unlawful activity, and pursuant to Title 28, United States Code, Section 2461(c), if convicted of any violation of Title 18, United States Code, Section 2314 or conspiracy to commit such a violation under Title 18, United States Code, Section 371, the Defendants shall forfeit to the United States:

A.     any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses of which they are convicted, including, but not limited to, the balances of the following accounts:

1.     The Rupert PayPal account bearing an account number ending in the digits 20678 (eBay user ID mrupert06gt);

2.     The Deal Makers, LLC Heritage Federal Credit Union account bearing an account number ending in the digits 96419; or

B.     a sum of money equal to the total amount of the proceeds of the offenses.

92.     Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461(c), the Court shall order the forfeiture of any other property of the Defendants, up to the value of the property described in Paragraph 91, if by any act or omission of the Defendants, the property described in Paragraph 91, or any portion thereof:

[24]

A.      cannot be located upon the existence of due diligence;

B.      has been transferred or sold to, or deposited with, a third party;

C.      has been placed beyond the jurisdiction of the Court;

D.      has substantially diminished in value; or

E.      has been commingled with other property which cannot be subdivided

without difficulty.

93.     It is the intent of the United States, pursuant to Title 21, United States Code,

Section 853(p), to seek forfeiture of any other property of said Defendants up to the value of all

forfeitable property as described above in Paragraph 91.


A TRUE BILL:


FOREPERSON


JOSEPH H. HOGSETT
United States Attorney

by:

Todd S. Shellenbarger
Assistant United States Attorney


[25]